1807.

## State *v.* Woodruff.

### In the Court below,

Samuel Woodruff, *Plaintiff in error ;* The State of Connecticut, *Defendant in error.*

In a criminal prosecution, after the case has been committed to a jury, who are unable to agree on a verdict, the Court may exercise its discretion in taking back the papers, and discharging the jury, though against the consent of the defendant, and some of the jurors.

That the defendant, in such case, has been put on his trial, and the jury not being able to agree on a verdict, have been discharged by the Court, shall not exempt him from a trial before another jury.

THIS was a prosecution before a justice, on the complaint of a grand-juror, for unlawfully voting in the town meeting of Durham, on the 10th of December, 1804.

The complaint stated, that the defendant, not being a freeman of the state, nor a lawful inhabitant of Durham, nor a householder, " and who had not, on said 10th day of " December, a freehold estate rated in the common list at " nine dollars, or personal estate rated in the said list at one " hundred and thirty-four dollars, and who had never been, " in any way or manner, qualified to vote in town-meeting, " or thereto admitted, did vote," &c. A conviction was had before the justice ; and the defendant appealed to the County Court.

The case was first heard in January, 1806 ; and the jury, to whom it was committed, after having had it several days under consideration, could not agree. The attorney for the State proposed, that the Court should take back the papers, and discharge the jury ; to which the defendant, and some of the jurors objected. The Court waited until some time in the afternoon of the last day of the session, and then directed the jury to deliver up the papers ; which they accordingly did, and the cause was continued.

At March term, it came on again to be tried. | After the jury were impannelled, and the defendant had pleaded

The having a freehold estate rateable in the common list at nine dollars but not actually rated, is not a qualification to vote in town-meeting.

*Not guilty,* there was an objection to the testimony, taken *ore tenus,* that there had been one trial, and that the defendant could not again be put in jeopardy ; which was overruled by the court. In the course of the trial, the defendant, to shew that he was qualified to vote in said town-meeting, offered in evidence a deed of a piece of land, dated the 13th of October, 1804, accompanied with proof, that he immediately took, and had ever since retained possession, and that the land was rateable at more than nine dollars in the common list. This evidence being objected to, by the attorney for the state, the court excluded it, on the ground that it was irrelevant, inasmuch as the land was not in the defendant's list for the year in which he was charged with voting illegally. The jury found the defendant guilty ; and judgment was rendered against him.

On a writ of error to the Superior Court, the judgment of the County Court was reversed, on the ground, that it is a person's owning real estate to the amount of nine dollars, as rated in the common list, which qualifies him to vote in town-meeting, and not his being rated for it, by having put it into his list.

*Daggett,* and *Gould,* for the plaintiff in error.

1. The former proceedings in January, 1806, are relied upon, by the defendant in error, as conclusively evincing, either that the court had not jurisdiction, or were precluded from trying the case again. To this it may be answered, in the first place, that the objection was taken *ore tenus,* whereas, if available at all, it should have been pleaded.(a) It was a bar, or nothing ; at least, it was an exception to the jurisdiction ; and in any view of it, could not support an objection to the admission of evidence. Certainly, advantage of a former acquittal could not be taken *ore tenus ;* nor could a former conviction be thus available.(b)

(a) *Leach's Cro. Ca.* 138, *Roche's case. Foster's C. L,* 16.
(b) 4 *Bla. Com.* 335.

R r r

Waiving, however, the irregularity of the objection, in point of form, what are its merits ? The question is, could the first jury be discharged, because they could not agree on a verdict, and the case be again heard by another jury ?

It is a fair presumption, that the first jury were not discharged unnecessarily. " We must," says Lord ELLEN-BOROUGH, " give credit to the court below, for having exercised its jurisdiction soundly." (c) Besides, it expressly appears, that the jury were not discharged, until the last day of the court.

That the jury should be discharged, where they have long had a case under consideration, and have been unable to agree, is a matter of such general convenience—of convenience to the prosecutor, to the defendant, to the court, and to the jury,—that nothing but the most settled rule of law ought to prevent its being done. The *dictum* in *Carthew*, (d) *viz.* That at common law, the jury cannot be discharged of the issue in any case, without the consent of the prisoner, nor in capital cases, with it, may be urged against the power in question ; but that *dictum*, if ever uttered, is false in both its parts. That the jury may be discharged in capital cases, see 2 *Hawk.* P. C. 622. *sixth edit.* 1 *Wils.* 157, *Kinlock's case*, S. C. *Foster* 16. *Foster* 22, *Wedderburn's case.* That in cases not capital, the prisoner's consent is not necessary, see *Dr. & St.* 171. *T. Raym.* 34, *Ferrar's case. Foster* 27, 28, 31, 23, 33. 2 *Hawk.* P. C. 622. In most of the cases, in which it has been held, that the jury could not be discharged, the only reason for discharging them was, that the prosecutor was not prepared with evidence ;—none are cases where the jury could not agree.

X It may be objected that one cannot be twice tried, or put on trial, for the same offence. But such is not the rule. It

(c) 5 *East* 33.                    (d) *Pa.* 465.

is, "*nemo bis puniri*" in any case, (*e*) nor be twice put in jeopardy of his life. (*f*) The defendant in this case was not twice tried ; to *try* is to bring to the test ; and this cannot be done without a determination of the suit. This is a principle sanctioned by the practice of all courts.

A right to discharge the first jury implies, that the defendant may be twice put on trial. (*g*)

*New trials*, in cases of *misdemeanours*, have been granted *against* the defendant; (*h*) and *for* the defendant, for any reasonable cause. (*i*)

The point now under consideration has undergone a very full and able discussion in the state of New-York ; and the right to discharge a jury who are unable to agree, and afterwards bring the defendant to trial before another jury, has been asserted and established. (*k*)

(*e*) 4 *Co.* 43.
(*f*) *Foster* 23. 1 *Wils.* 157.
(*g*) 2 *Hal. P. C.* 297. 2 *Hawk. P. C.* 627. 5. *Burr.* 2661, *Woodfall's case.* 2 *Caines* 100, *The People v. Barret.*
(*h*) 4 *Term Rep.* 753. 5 *Term Rep.* 20.
(*i*) 4 *Bla. Com.* 361.

(*k*) The case alluded to was *The People* v. *Nathaniel Olcott.* The following statement of the case, and opinion of the Court, was read by the counsel from a manuscript note.

The defendant being brought into this Court by *Hab. corp.* a motion was made, that he be discharged upon the following statement of facts : The defendant and *Henry Aborn* were indicted at New-York Oyer and Terminer, in November last, for that they and one *Salmon Roe* had *conspired to defraud the Bank of New-York of money.* *Roe* was dead, when the indictment was found. The defendant and *Aborn* were brought to trial at the same Court, and the latter acquitted ; and with respect to *Olcott*, the jury, after having remained out *a long time*, to wit, from about 8 o'clock on Saturday evening, till near 2 o'clock next day, and coming into Court two or

1807.

STATE
*v.*
WOODRUFF

2. But the principal question, is, whether the deed of the
land, not rated in the defendant's list, was admissible?

It is said, that the land *need not be rated;* if *rateable,* it
is sufficient. Certainly not. The reason of the law forbids

three times for information and advice, agreed on the following ver-
dict : " That there was an agreement between *Roe* and the defend-
" ant to obtain money from the Bank of New-York, but with intent
" to return it again." This verdict the Court considered as imper-
fect, and refused to receive it. The Court then asked the jury, if
there was any prospect of their agreeing to a general verdict of
guilty, or not guilty ? and the foreman said, No. They were then
asked, if they could agree to find a *special* verdict, stating the pro-
curing the money from the Bank in the manner stated in the indict-
ment, except as to the intent therein charged to defraud the
Bank, and leave that intent as an inference of law to the Court ?
The foreman said, No. They were then asked, whether they would
agree to a special verdict finding the conspiring as charged, excepting
the intent to defraud, &c. and with the additional fact, that they in-
tended to return the money again ? and the foreman answered again
in the negative. Whereupon the Court, against the consent of the
defendant, ordered a juror to withdraw ; and the rest being called,
and only eleven answering, they were discharged.

The counsel for the defendant contended, that he ought to be
discharged on these three grounds :

1. Because the defendant having been once put on his trial, and
the jury not being able to agree on a perfect verdict, and being dis-
charged by the Court against the consent of the defendant, he cannot
be again brought to trial.

2. Because the conviction of two persons is requisite to constitute
the crime of conspiracy ; and *Aborn* being acquitted, and *Roe* be-
ing dead, the defendant cannot legally be convicted.

3. Because the verdict offered was a competent verdict of ac-
quittal, and ought to have been received.

In July Term, 1801, the opinion of the Court was delivered by
KENT, J.

1. The first point arose, and was decided by this Court, at the

this construction. It undoubtedly was intended, that those *who vote to tax others should, uno flatu, tax themselves.* Thus, exempts may not vote. (*l*) The having taxable property is a necessary part of the qualification, but the governing rea-

(*l*) *Stat.* 403, *edit.* 1796.

last Term, in the case of *Denton ;* (*a*) but as the same question was afterwards raised, and argued by counsel, in this cause, it was evidently with a view, that the Court should reconsider its former decision. This has accordingly led me to give the subject a new and very attentive consideration ; and my researches and reflections have terminated in the following result.

Lord COKE lays it down as a general rule, that a jury, sworn and charged by the Court, in case of *life* or *member,* and so in all cases of *felony,* cannot be discharged by the Court, or any other, but they ought to give a verdict. (*b*) The only authority, however, that he cites, in support of this general position, is a case from 21. *E. 3.* 18. in which it was adjudged, that a person indicted for larceny, and who had pleaded *not guilty,* and put himself upon his country, should not afterwards, when the jury was in Court, be admitted to become an approver ; because, by solemnly denying the fact by his plea, he had lost all credit, and ought not to be received as a witness against others. (*c*) This authority cited by Lord COKE does not, then, warrant, or add the least sanction to his general rule ; and the authority itself was afterwards overruled ; (*d*) and the Court used to exercise its *discretion,* in sometimes refusing, and sometimes admitting persons to the liberty of approving, after the jury were sworn, and evidence in part given. The same doctrine advanced by COKE was afterwards engrafted by Serjeant HAWKINS, (*e*) and by Mr. Justice BLACKSTONE, (*f*) into their elementary treatises, on the criminal law ; but their opinions rest upon the foundation of Lord COKE's authority. There is also a note in *Carthew,* (*g*) in which it

(*a*) *April Term,* 1801.
(*b*) 1 *Inst.* 227. *b.* 3 *Inst.* 110.
(*c*) This reason for the decision is given by *Brooke* and *Foster,* *pa.* 33.
(*d*) *Foster* 33, 34.
(*e*) *Vol.* 2, 622.
(*f*) *Com. Vol.* 4.
(*g*) *p.* 465.

1807.

STATE
v.
WOODRUFF

son is the *having it taxed, or rated.* This is the security of voters, that no man can lay a burden on his co-voter, and be free himself. The combined reason, then, is this ; to secure the independence of voters, and to make their acts af-

is stated to have been a resolution of all the judges of England, of which Ch. J. HOLT, was then one, that in capital cases, a juror cannot be withdrawn even with the prisoner's consent, nor in any case, civil or criminal, without it.* With respect to this note in *Carthew*, it underwent a critical examination, in the case of the two *Kinlocks*, in the year 1746 ; (*h*) and it was considered as a *palpable mistake* of the reporter. The case, as corrected by a M. S. report of Ch. J. EYRE, was an indictment for perjury, and on the trial, the prosecutor finding his evidence defective, insisted on withdrawing a juror ; and Ch. J. HOLT refused it, saying, that in criminal cases, a juror cannot be withdrawn but by consent, and in capital cases not even with consent. This case, therefore, goes only in restraint of what was properly deemed an unreasonable, and oppressive claim, on the part of the prosecutor.

In the case of the *King* v. *Seffs*, (*i*) Lord HARDWICKE followed this example of HOLT. He refused, in a case of barratry, to permit a juror to be withdrawn, on the motion of the prosecutor, after he had gone into proof, and found himself deficient, because the punishment annexed to that offence might be *infamous* ; but said it might be, and had been, done, in other cases of misdemeanor. This, like the preceding case, controuls an improper exercise of the power of the Court, and does not deny its existence. It, perhaps, admits too much ; for, to allow the prosecutor, in *any case*, to withdraw a juror, because he finds himself not fully prepared in his proofs, is an unreasonable indulgence, unless it should be made to appear, that some part of the testimony is wanting, through the trick or agency of the defendant.

It seems, then, that the position generally denying the power of the Court to discharge a jury sworn and charged in a criminal case, has originated (probably without further inquiry or examination) from a *dictum* to be found in the institutes of Lord COKE ; and that the *dictum* rests upon his single authority, without the sanction of

* In civil causes, the justices, *upon cause*, may discharge the jury, *Br. Inquest.* 68, 47.

(*h*) *Foster*, 27, 28.

(*i*) 2 *Stra.* 984.

fect their interest. The statute relative to the admission of *freemen*, (*m*) requires personal property *actually rated* in the voter's list ; and so has been the practice. The statute concerning *societies* (*n*) has a similar requisition.

(*m*) *Stat.* 217, *edit.* 1796.      (*n*) *Ib.* 408.

any judicial decision. None of the decisions go any further than to prescribe a rule to the discretion of the Court in *particular cases*. On the contrary, there are many authorities, admitting and establishing the power of the Court to discharge the jury sworn in capital cases.

In the case of one *Ferrars*, reported in *Sir T. Raymond*, (*j*) and which was an information for forgery, it is there said to have been held, by all the justices, that after a jury are sworn and charged in a capital case, they may be dismissed, or a juror withdrawn, though this was said to be contrary to common tradition. Again, on a trial for larceny, reported in *Ventris*, (*k*) after the jury were sworn, as the witnesses did not appear, and were suspected to be tampered with by the defendant, the jury were discharged, and the trial put off ; and Sir *John Strange* produced the record of a case of *Hil.* 8 *H.* 7. where, on indictment for murder, the jury delivered in a verdict handed to them by the prisoner, and they were, in consequence of it, discharged and committed, and the defendant tried again. (*l*) In the spirit of these decisions Sir *John Hall* admitted, that even a new trial might be granted in criminal cases, if the verdict was obtained by *fraud* or *trick ;* and Sir M. HALE, (*m*) in direct opposition to COKE, says, that the practice had in his time become *ordinary* for the Court, after the jury were sworn and charged, and evidence given, if it appeared that some of the testimony was *kept* back, or that there might be a fuller discovery, and the offence notorious, as murder or burglary, to discharge the jury, and remit the prisoner for another trial. In the case of the two *Kinlocks*, (*n*) to which I have already alluded, the single point decided was, that the Court might, in a capital case, on motion of the prisoner's counsel, and at his request, and with the consent of the Attorney-General, before evidence given, discharge the jury, to let in a new defence, which the prisoner could not otherwise have ; but the general question touching the power of the Court to discharge jurors underwent

(*j*) *Pa.* 84.      (*k*) 1 *Vent.* 69.
(*l*) *Foster* 27.      (*m*) *Vol.* 2, 295.
(*n*) *Foster*, 22 to 40.

That relating to *towns* (o) requires, that a person have so much " *besides his person*," rated in the common list. By the expression " *his person*," is meant his poll tax, and identifies *the list*, in which the rating is to be found, that is,

(o) *Stat.* 415, *edit.* 1796.

a full and solemn discussion, and all the cases that I have mentioned were cited and examined. Ten of the English judges gave their opinions, *seriatim*; and according to the elaborate and able argument of Sir M. FOSTER, which he has preserved entire, and which we may consider as the opinion of all the judges except one, as all but one agreed in the same principles and result, the Court came to this conclusion : That the general rule, as laid down by Lord COKE, had no authority to warrant it, and could not be universally binding, that the question was not capable of being determined by any *general rule*, for that none could govern the *discretion* of the Court in all possible cases and circumstances ; and that the case in *Carthew* was of little or no weight, and must have arisen from mistake in the reporter. Sir M. FOSTER stated several *exceptions* to the general rule of COKE, and said, that many more might be mentioned. Among other instances, he admitted the right of the Court to discharge the jury after evidence given, because the indictment did not suit the case, and had been mistaken by the prosecutor ; and this power is also recognized in several of the books. (o) He further admitted the right of the Court, in the cases stated from *Ventris* and *Hale*, when practices had been used to keep the witnesses out of the way, although he reprobated, and very justly, the extent to which it had been carried in other instances, where the evidence was not sufficient to convict. (p)

The circumstances in which the Court has exercised its descretion in discharging the jury have multiplied since the time of *Foster* ; and have now become very considerable, in point of number and importance. If a prisoner be found to be *insane*, (q) or in a *fit*, (r) or be taken *in labour*, (s) or if a juror escape from his fellows and go off, (t) or be taken in a *fit*, or be intoxicated, in all these

(o) *Comb.* 401.   *Kelynge* 26, 52.
(p) *St. Tri.* 2 *Vol.* 710,  827.
(q) 1 *Hale* 35.                    (r) *Leach* 443.
(s) *Foster* 76.        .        (t) 2 *Hale* 296.

*his personal list.* Personal estate in another's list is, *prima facie, a fraud,* and of very suspicious aspect. In this method, any man may be qualified to vote ; the law would be at once perverted, and fraud might be practised without let,

cases, it has been ruled, that the Court may discharge the jury, and remand the prisoner for another trial.

The general rule, as laid down by COKE, and most of the cases on the subject, relates to trials for capital offences ; and even then we have seen how far the rule has been justly questioned, if not wholly done away, and the many exceptions which are conceded to exist against its universality. But the case now before the Court is a case of *misdemeanour* only, and the precise question is, whether, in *such a case,* it does not rest in the discretion of the Court to discharge the jury, whenever they deem it requisite to a just and impartial trial. It is worthy of notice, that there is no general rule, nor any adjudged cases denying this power in the Court in case, of misdemeanour.—The resolution of HOLT, as it appears in its correct and authentic state in *Foster,* and the decision of lord HARDWICKE, only go to restrict the undue exercise of this power on trial for misdemeanours, by denying to the prosecutor the liberty of having a juror withdrawn, because he happens, after entering into his testimony, to find himself unprepared, through his own default; and even this extraordinary indulgence is granted, according to HARDWICKE, if the punishment annexed to the offence be not infamous.

If the question in capital cases be doubtful, there is nothing to render it so in cases of misdemeanour. The power of the Court in these cases is analogous to their power in civil cases ; and they seem, in many respects, to possess the same controul over the verdict in exercising the power of awarding new trials, (*u*) and tak-

(*u*) 6 *Term. Rep.* 638. See also as to new trials, *T. Jones* 163. 1 *Lev.* 9. 21 *Viner* 478. *Lofft* 157. 4 *Black. Com.* 355. New trial may be in a capital case, when the defendant is convicted. See *Ridgway* 50,—1. 1 *Lev.* 9. Lord KENYON, in 6 *Term Rep.* 638, confines the power to grant new trial in case of misdemeanour, to cases only where defendant is *convicted* : no instance of a new trial, where he was acquitted.

1807.

———

STATE
v.
WOODRUFF

and with impunity. By shifting of property, how many persons might be qualified, in one year, to vote in our town meetings !

It may be objected, that by the decision of the Superior Court, (*h*) the property of jurors need not be *rated*. The

(*h*) 2. *Root,* 453, *State* v. *Doane.*

ing a privy verdict, (*v*) and the party is also entitled to a writ of error as a matter of right. (*w*)

I conclude, then, that as no general rule or decision, that I have met with, exists to the contrary in cases of misdemeanour; and as the rule, even in capital cases, abounds with exceptions, and is even questioned, if not denied, by the most respectable authority, that of nine of the judges of England, it must, from the reason and necessity of the thing, belong to the Court on trials for misdemeanours, to discharge the jury, whenever the circumstances of the case render such interference essential to the furtherance of justice.

It is not for me here to say, whether the same power exists, in the same degree, (for to a certain degree it must inevitably exist,) on trials for capital crimes, because such a case is not the one before the Court, and I choose to confine my opinion strictly to the facts before me. And with respect to misdemeanours, we may, with perfect safety and propriety, adopt the language of Sir M. FOSTER, (*x*) which he, however, applies even to capital crimes : " That it is impossible to fix upon any single rule, " which can be made to govern the infinite variety of cases, that " may come under the general question touching the power of the " Court to discharge juries sworn and charged in criminal cases." If the Court are satisfied, that the jury have made long and unavailing efforts to agree ; that they are so far exhausted as to be incapable of further discussion and deliberation; this becomes a case of necessity, and requires an interference. All the authorities admit, that when any juror becomes mentally disabled, by sickness, or intoxication, it is proper to discharge the jury. And whether the mental inability be produced by sickness, fatigue, or incurable prejudice, the application of the principle must be the same. So it is

(*v*) *T. Raym.* 193.
(*w*) *Laws N. Y.* 1 *Vol.* 184.
(*x*) *Pa.* 29.

answer is, 1. The Statutes are not *in pari materia*. Jurors are not *voters of taxes*. 2. Their *independence* and their *verdict* are not influenced at all, by the actual rating of their property, but by their having property that is rateable. 3. The admitted to be proper to discharge the jury, when there is good reason to conclude the witnesses are kept away, or the jury tampered with, by means of the parties. Every question of this kind must rest with the Court, under all the particular or peculiar circumstances of the case. There is no alternative ; either the Court must determine when it is requisite to discharge, or the rule must be inflexible, that after the jury are once sworn and charged, no other jury can, in any event, be sworn, and charged in the same cause. The moment cases of necessity are admitted to form an exception, that moment opens a door to the *discretion* of the Court to judge of that necessity, and to determine what combination of circumstances will create one.

There is an opinion given in an ancient book of approved authority, The *Doctor and Student*, (y) which comes up fully to the case before the Court. In answer to the 5th question of the *Doctor*, whether it stand with conscience to prohibit a jury of meat and drink till they be agreed, the learned author, *St. Germain*, puts this answer into the mouth of the student : " That if the case happen, that " the jury can in no wise agree in their verdict, and that appeareth " to the justices by examination, the justices may, in that case, suffer " them to have both meat and drink for a time, to see whether " they will agree ; and if they will in no wise agree, I think" (continues the student) " that the justices may take such order in the " matter as may seem to them, by their discretion, to stand with " reason and conscience, by awarding of a new inquest and by set- " ting fine upon them, that they shall find in default, or otherwise, " as they shall think best by their discretion, like as they may do if " one of the jury die before verdict, or if any like casualties fall in " that behalf."

This power in the Court, so far from impairing the goodness or safety of trial by jury, must add to its permanence and value. The doctrine of compelling a jury into unanimity by the pains of hunger and fatigue, so that the verdict shall, in fact, be founded not on temperate discussion and clear conviction, but on strength of body, is a monstrous doctrine, that does not, as *St. Germain* evidently hints, stand *with conscience*, but is altogether repugnant to a sense of hu-

(y) *Dial.* 2. *ch.* 53. *p.* 272.

opinion, in the case cited, is *obiter* only ; and if the juror had no estate, the exception, as a matter of arrest, would have been groundless.

It may be said, that the deed was relevant as to part of the qualification ; that is, it is proved, that the voter had pro-

manity and justice. (z) A verdict of acquittal or conviction, obtained under such circumstances, can never receive the sanction of public opinion. And the practice of former times of sending the jury in carts from one assize to another, is properly controuled by the improved manners and sentiments of the present day. So, a verdict obtained unfairly, by secret and artful, or bold and direct influence over the jury, by the parties, their friends, or by-standers, would, if admitted to be recorded, be a disgrace to the administration of justice. The power of discharging a jury, in these and other instances, which might be enumerated, is a very salutary power, and calculated to preserve that mode of trial in its purity and vigour.

In the present case, I cannot say the discretion of the Court was unduly exercised. The jury had been out a long time, and had repeatedly come into Court, and received its information and advice. They, at last, returned a verdict, which, for the present, I will assume to be an imperfect one, on which no judgment could be given. They refused to give any other verdict, either general, or special. In short, the jury, after being out from Saturday evening till the afternoon of the succeeding day, return, and declare they cannot agree to give any legal verdict. The circumstances constituting a case proper for the discharge of a jury must be more accurately perceived, and more justly felt, by the Court, before whom the trial is had, than by any other Court. It must, therefore, be a pretty clear case of abuse of discretion to induce me to say the Court below ought not to have discharged the jury.

I am, therefore, of opinion, on the first point, that the defendant ought not to be discharged.

2. The second ground, on which the motion was made, is, that the conviction of two persons is requisite to constitute the crime of

(z) Mr. *Emlyn*, in his admired preface to the *State Trials*, pa. 6. and 7, exposes, in strong terms, the injustice and absurdity of starving a jury into unanimity in criminal cases.

perty.  But the reply is, the qualification was *one combined proposition*, consisting of two facts, one being dependent on the other; and unless both facts existed, where was the relevancy ?  It would be like a grant of reversion without at-

conspiracy ; and *Aborn* being acquitted, and *Roe* being dead, the defendant cannot legally be convicted.

But the case of the *King* v. *Nicolls*, (a) is directly in point, that one conspirator may be convicted after the other is dead, before conviction ; and this was a determination by the Court of K. B. and a subsequent case of the *King* v. *Scott and Hains*, (b) is also in point, to shew, that the death of one of the number, requisite to constitute the offence charged, will not prevent the conviction of the survivor. It was the case of a riot, in which three persons, at least, are necessary to constitute the charge ; there were six persons indicted ; two were acquitted ; and two died before trial ; and Lord MANS-FIELD held, that the two who were convicted, must have been guilty together with one or both of the persons who had died before conviction ; and yet the conviction of the two survivors was held good.

3. The remaining ground of the motion is, that the verdict offered by the jury was a competent verdict of acquittal, and ought to have been received.

The offence charged, was a conspiracy to defraud the bank, and the verdict was " that there was an agreement between *Roe* and " the defendant to obtain money from the bank, but with intent to " return it again."  This, however, is no answer to the substance of the charge, which was the *unlawful* and *fraudulent intent* to *procure* money from the bank.  That finding leaves the truth or falsity of the accusation in equal uncertainty.  The intent afterwards to return the money might consist equally with a fraudulent, or an innocent, intent to procure the money, in the first instance. (c)  This finding was, therefore, so imperfect, that had it been received, the Court could not have given judgment upon it, and would have been obliged to award a *venire de novo*.  The jury ought to have found, either a special verdict, stating the facts at large, and leaving the

(a) 2 *Stra.* 1227.

(b) 3 *Burr.* 1262.

(c) If a person do an act, the *probable* consequence of which is to defraud, it will, in contemplation of law, constitute a fraudulent intent.  *Arguendo* in 3 *Term. Rep.* 176.

tornment, or bargain and sale without enrolment; or like an execution not recorded. It presents a question of sheer law on the insufficiency of evidence, which manifestly weighs nothing, and which the Court ought to guide. In England, it would be a ground of non-suit. (*q*)

It may be said, the Court would, in this way, prescribe the order in which the testimony shall be exhibited. The decision of the Court will support no such position. It declared, that it was *no testimony whatever*. But the Court may, of right, prescribe the order of exhibiting testimony, as it saves time and controversy ; because, if possible, the Court will, for the benefit of all parties, decide the points of law. Indeed, a deed of property *not rated*, is not in proof of the issue. For the issue is not, whether the defendant *had estate*, but whether he had *estate rated in his own list*.

*Huntington*, (of Middletown,) for the defendant in error, after stating the proceedings before the County Court, and the question as to the power of the court to discharge the first jury, and bring the defendant to trial before another jury, submitted the point without argument.

(*q*) 5 *East* 10. 3 *East* 400.

law to the Court ; or by a general verdict, they ought to have affirmed or negatived the charge of a fraudulent intent.

I am satisfied this was no verdict of acquittal. If it had any operation, it would be against the defendant; for in answer to the indictment, the jury have found the fact, that the defendant and *Roe* did agree together to obtain money from the bank ; and they have *not* negatived the fraudulent intent.

My opinion on all the points, is, that the defendant ought not to be discharged.

*July Term*, 1801. *Per tot. Cur.* according to this opinion.

As to the other point, he contended, that a person who, at the time of voting in town-meeting, had either a freehold estate of nine dollars, or personal estate of one hundred and thirty four dollars, according to the rate, at which property was, by law, to be put into the list, was a voter, whether the property was contained in his list, or not : That a freeman, being by this act entitled to vote, though a pauper, serves to shew, that the legislature did not intend, that liability to taxation should be an inseparable incident to the right of voting in town-meeting : That if the legislature had this intention, the amount of property, to entitle a man to vote, would have been the same, whether real, or personal ; whereas now, the person whose list would amount only to nine dollars, if he has a freehold, is entitled to vote, though if he has personal estate only, he must possess sufficient for a list of one hundred and thirty four dollars, the freehold voter paying only about one fifteenth part of the amount of taxes paid by the voter whose privilege is founded on personal property : That the property required in a voter is so much as to shew, independent of the inequality mentioned, that the principle of liability to taxation, contended for as the rule of construction, is erroneous ; and that the legislature intended, that those should be admitted to vote, who, by lawful inhabitancy, and the possession of the property specified, at the time of voting, exhibited that evidence of steadiness, industry, and economy, and of their interest in the welfare of society : That the list of a person is not the prescribed evidence of the property, by which he is entitled to vote : That the omission by a person, to put property into a list, may be presumptive evidence, that he did not own it at that time ; but that the putting of property into the list, being his own act, and for his own benefit, is no evidence, or very slight evidence, of ownership of real or personal estate, at that time, and *a fortiori* of ownership at any subsequent period : That a pauper, by giving in a list, might thereby, on the principle contended for, entitle himself to vote ; and a person who had become a pauper, at the time of voting, might, by a list given in when he owned

property, which he afterwards lost or sold, be entitled to vote, and impose taxes, which would not affect his interest ; because he would have none to be affected, which, at least, is to oppose one of the principles contended for by the counsel for the plaintiff in error, by another which is much insisted upon by them : That whatever property the person may have had, when he gave in his list, he must have property of the kind and amount specified in the act, as well as be an inhabitant of the town *at the time of voting* ; and that, therefore, many persons most interested in regulations made by towns cannot vote in town-meeting. if property owned by them, though not in their lists, does not qualify ; as if two of the wealthiest inhabitants of a town exchange or sell their farms, or other property comprized in their lists, neither of them can vote in a town meeting subsequent to the exchange or sale, until the anniversary of giving in lists ; though the property which they have, at the date of the meeting, and by which only they are entitled to vote, is not in their lists, though, at the same time, they are liable to be taxed for the property, by them sold or exchanged after it had been put into their lists : That the act relating to freemen, in respect of that qualification which is founded on freehold estate, which is the same subject, does not prescribe, that it should have been put into the list of the person claiming to be made free, nor even the act in addition to it ; (*d*) nor do the phrases or spirit of either of those statutes countenance the idea, that those only shall vote, who, at the time of voting, are liable to be taxed for the property by which they are qualified ; but other characteristics of voters, *viz.* inhabitancy, *possession* of property, " quiet and peaceable behaviour and civil conversation," are rendered indispensible, by explicit provisions : That the difference between a freeman, and a town-voter not a freeman, is, that the right of the freeman is permanent, but the right of the town-voter fluctuating as his property : That, at the time of his *voting*, he must possess a freehold, as the freeman must, when he is made free : That the law

(*d*) See *Stat.* 217,— 599, 600. *edit.* 1796.

respecting societies, (*e*) relied on as explanatory of the one under consideration, contains nothing more explicit on the subject of inquiry, the qualifications of voters founded on property being in that act comprised in these two phrases, *viz.* " unless such person hath a free-" hold in the same town or society, rated at nine dollars, *or* " one hundred and thirty four dollars in the common list :" That though there is a subsequent provision, (*f*) that those " who are by law exempted from the payment of taxes, for " the support of the worship and ministry of the Presbyte-" rian, congregational, or consociated churches, in this State, " &c. on account or by reason of their dissenting from the way " of worship and ministry aforesaid, shall not act or vote in " any town or society meeting, in those votes which respect " or relate to the support of the worship and ministry afore-" said :" There is no provision, that he who has the freehold or personal estate by the statute required, shall not vote, if he has no personal exemption ; but if any inference, applicable to this subject, can be made from this act, it is, that all who have the *amount* of freehold or personal estate required may vote in any town or society meeting, whether they are liable to pay taxes for their property or not, unless they are exempted from the payment of taxes " on account " or by reason of dissenting," &c.—That the statute respecting jurors, in which the phrase is " shall have a freehold es-" tate rated in the general list at nine dollars, or more," (*g*) has received a construction correspondent to the principles now contended for by the defendant in error (*h*) ; and that it is immaterial to the merits of the decision, that the objection, which it was calculated to remove, was groundless, and not presented by the facts :—That though jurors are not voters of taxes, they are to have one of the qualifications of voters, *viz.* a freehold estate rated in the general list at nine dollars or more ; and of this provision the judgment of the Court is " This sum is the rule given by law to ascertain the

(*e*) *Stat.* 401, *&c. edit.* 1796.
(*f*) *p.* 403.                    (*g*) *Ib.* 249.
(*h*) 2 *Root* 451, *State* v. *Doane.*

T t t

1807.

————

STATE
*v.*
WOODRUFF

" quantity of estate requisite to qualify a juryman, but it " doth not mean to make it a requisite, that it be actually " rated or put into the common list :" That conformably to this decision, and the preceding remarks, the opinion of the Superior Court appeared to be correct; that " the deed and " testimony to prove the quantity of real estate said Wood- " ruff owned, at the time of voting, was relevant, and ought " to have been admitted ; for it is a person's owning real es- " tate to the amount of nine dollars, as rated in the common " list, which qualifies him to vote, and not his being rated " for it, by having put it into his list :" (*i*) And that, therefore, the judgment of the Superior Court ought not to be reversed.

BY THE COURT, unanimously, the judgment was reversed, on the ground, that the qualification required by statute is the having a freehold estate *actually rated* in the common list at nine dollars ; and that the having such estate *rateable* in the list at that sum is not sufficient.

(*i*) Reasons of the Superior Court in this case, on reversal of the judgment of the County Court, *Middlesex County, July Term,* 1806.