Parker C. J.
delivered the opinion of the Court. In the case of Commonwealth v. Bowden, which was a trial for high way robbery, the jury to whom the case was committed having deliberated so long without coming to an agreement, as to satisfy them that further attempts would be unavailing, a juror was, without consent of the prisoner, withdrawn ; and at the same term the cause was committed to another jury, which agreed in a conviction, and the prisoner was sentenced. The objection was taken, that a second trial under these circumstances was unlawful, but the Court decided against the objection, on the ground that it was contrary to the spirit of our institutions and government to coerce a jury into a verdict, and therefore it was proper to relieve them from the cause, after sufficient time had been taken to make it clear that there was no probability of an agreement. By the report of the opinion of the Court, which was probably delivered by Chief Justice Parsons, the subject would seem to have passed without much deliberation, and the reasoning in support of the opinion is much more concise than is usual upon new questions of importance. The precedent however has been *555 followed in many instances since, in trials not capital; and in one case at Plymouth, in a trial for capital arson, the jury were discharged of the case under similar circumstances, and on another trial at the succeeding term a conviction of the burning of a dwellinghouse, but not in the night-time, took place, and judgment followed. In this latter case no question was made as to the regularity of the second trial.
These cases perhaps would not be binding, if we were now satisfied that they were incorrectly settled. The first was not a capital case, and the second passed without objection or argument. Upon examination of the question, however, we are satisfied they were both rightly decided, and that there is no difference, in relation to this question, between felonies which are capital, and those which are not. The maxim on which the objection is founded, as stated by Lord Coke, applies equally to all felonies, whether capital or not; his words are, “ A jury sworn and charged in case of life or member, cannot be discharged by the court or any other, but they ought to give a verdict.” Co. Lit. 227 b ; 3 Inst. 110. So in the amendment to the constitution of the United States, which provides that no person shall “ be subject, for the same offence, to be twice put in jeopardy of life or limb ; ” all felonies, whether capital or otherwise, being included in that provision.
The question to be discussed therefore is, whether by the common law, or by virtue of the constitution of the United States, a second trial for the same felony is prohibited, when the first shall have failed on account of the disagreement of the jury; or in other words, whether a jury having such a cause committed to them, can be discharged of it, if in the opinion of the court they have labored sufficiently long to convince them, that- any verdict they may come to will be the effect of exhaustion of mind and body, instead of the conviction of their understandings. In regard to the doctrine of Lori Coke, it undoubtedly maintains the objection. But the very universality of the rule laid down by him has led great luminaries of the law to deny its correctness. Sir Michael Foster and Sir Matthew Hale, both of them as learned in the criminal law at .east as Sir Edward Coke, have maintained a *556 .different doctrine, and numerous cases in the English courts have been decided against his opinion. If his position be true, then if a juror drop dead in a fit, or if the prisoner be seized with insanity, or if a female be taken with the pains oí labor, or if one of the jurors abscond, so that he cannot be foun'd, or in short, if any circumstance should providentially happen to interrupt the trial after the case is committed to the jury, the prisoner must go free, for a mistrial under such circumstances would amount to an acquittal. And in all such cases jurors have been withdrawn and the prisoner tried again.[1]
Cases like these, which so manifestly show the necessity of discharging a jury, after a cause has been committed to them, without depriving the government, of the right of further prosecuting the offence, must have a strong tendency to prove that Lord Coke intended to lay down the general principle only, without specifying the exceptions, which from the very nature of the case would admit of no very precise definition. In looking through the English cases upon the subject, we are satisfied in adopting the opinion, that by the English common law, in all cases of felony, where a jury has been charged with a cause and any unforeseen necessity occurs, the cause may be taken from them and a new jury charged with the trial. The existence of this necessity must be determined by the court, on the high responsibility they are under to the public. In all the exceptions which have been mentioned, to the universality of the rule, as laid down by Lord Coke, without doubt the Court would exercise the power which has been exercised by the courts in England. So in all other cases of necessity, though not like those which have happened in England and been decided to form exceptions to the rule, the Court here must exercise its discretion upon them. The principle being admitted, that necessity is to control the operation of the rule, it follows of course, that the court must judge when the case has happened, which will justify them in discharging the jury. Many cases may be suggested equally strong with those which have been judicially acted upon, for *557 which there would be no relief, if the rule admits of no exceptions, or if the court are limited in ..heir discretionary authority to those exceptions which have already been established. Suppose the court room should suddenly take fire, or be suddenly struck with lightning, or a tremendous earthquake should happen, so that the lives of all should be in jeopardy, and the jury, panic struck, should disperse, could not the judge order the prisoner to be remanded and commence the trial anew ? Suppose the judge assigned to hold the sessions, should while waiting the return of the jury be seized with an apoplexy and die, and no other judge being present, the jury should separate ; shall the prisoner go free, or shall there be a new trial ? These are cases which seem to leave no doubt, and yet they are not to be found in any judicial decision. The truth is, that the cases recorded are but examples to illustrate the application of the rule, not rules themselves by which future judges are to be limited and restrained.
Assuming it then as an incontrovertible principle, that a jury charged with a cause on an indictment for a felony, may be discharged of it without a verdict, in cases of necessity, it remains to be inquired, whether the case before us is one of that description.
By necessity cannot be intended that which is physical only ; the cases cited are not of that sort, for there is no application of force upon the court or the jury which produced the result. It is a moral necessity, arising from the impossibility of proceeding with the cause without producing evils which ought not to be sustained. According to the practice of England in ancient, if not in modern times, it may be doubtful, whether the mere disagreement of a jury would constitute the necessity in question ; for by that law the jury, after the cause is committed to them, are to be kept without meat or drink, fire or candle, until they shall have agreed ; and if this shall not be until the term of the court is closed, they may be made to follow the judge in carts to the next shire, and so until they shall have agreed. Under this severe coercion it will be rare that a jury withholds a verdict beyond a reasonable time, though it may well be doubted whether a verdict so obtained would do any honor to the administration *558 of justice. It is well known that this manner of dealing witn juries has not been practised in this commonwealth, of late years, if it ever was. In all cases committed to them they are made as comfortable as circumstances will admit of; are accommodated with fire and light, and are- allowed reasonable refreshments at proper intervals. This change is owing to a general change of circumstances, and among others, to the more proper estimation of the agency of the jury in criminal trials than was formerly had. Practically, as well as theoretically, there is now a trial by jury ; the members of it are deemed to be sound and intelligent men ; it is supposed that their minds and faculties are to be exercised on the subjects committed to them ; and that their verdict is the truth, as found by the evidence submitted to them. In this state of things, to attempt to coerce them by restraints and privations would be absurd. The jury themselves would revolt at any attempts to overpower their minds by famine or other violence, and resolute adherence to opinions already formed would be the sure consequence of any unreasonable effort to coerce them into a formal agreement. This change in the manners of the times, of necessity produces a change in the course of trials. If a jury cannot now be starved into a verdict, if they cannot be carried in the train of the judge from county to county, it seems necessarily to follow, that when they have applied their minds to the case as long as attention can be useful, and have come to a settled opinion resulting in a disagreement, the cause must be taken from them ; and public justice demands that another trial should be had.
But it is said, this is putting a man’s life twice in jeopardy for one and the same offence.
So i' is, when any of the accidents happen which are acknowledged to form exceptions to the rule. So also, when a man is acquitted on an indictment substantially bad, or convicted, but the judgment is arrested ; although in these cases ingenuity has suggested that he never was in jeopardy, because it is to be presumed that the court will discover the defect in time to prevent judgment. This protection however is bottomed upon an assumed infallibility of the courts, which is not admitted in any other case.
*559 Another objection is, that the discretion thus claimed for the court to discharge a jury in case of final disagreement, is dangerous and may be exercised to the prejudice of prisoners, especially if the government, or the public, or the court itself, should for any cause desire their conviction. And it is true, that discretionary power in a judge is not unattended with danger; but still it must be given, and the course of justice cannot be pursued without it.[1] If not exercised in this way, it may be in many others, to the same end ; for instance, by granting a continuance on the suggestion of the public prosecutor, upon plausible pretexts, when the real ground may be to postpone the trial to a season more' favorable to a conviction.

Motion overruled.

 See 1 Chitty’s Crim. Law, 630 et seq.; Commonwealth v. Clew, 3 Rawle, 498.

 Commonwealth v. Knapp, 9 Pick. 515 ; Mendon v. County of Worcester, 10 Pick. 235 ; Commonwealth v. Parker, post, 550 ; State v. Woodruff, 2 Day, 504 ; People v. Barrett, 2 Caines’s R. 100, and 304. But see Commonwealth v. Clew, 3 Rawle, 408, and Commonwealth v. Cook, 6 Serg. & Rawle, 577, contra