Garland Rex **BRINLEE**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 73–1340.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1974.

Decided May 1, 1974.

Albert A. Wolf, Bismarck, N. D., for appellant.

Counsel for appellee waive oral argument. Brief was filed.

Harold O. Bullis, U. S. Atty., Fargo, N. D., Nathan G. Graham, U. S. Atty., Ben F. Baker, Asst. U. S. Atty., Tulsa, Okl., for appellee.

Before MATTHES, Senior Circuit Judge, HEANEY, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

TALBOT SMITH, Senior District Judge.

The defendant, Garland Rex Brinlee, Jr., was convicted by a jury of conspiracy [1] to violate firearm statutes [2] and 18 U.S.C. § 844(h),[3] which prohibits carrying an explosive during the commission of a felony, as well as of the substantive offenses of the possession of unregistered firearms (a bomb and a sawed-off shotgun) and of making a firearm (a bomb) without paying the required tax.[4]

By way of background, and we here adopt the unchallenged statement contained in defendant's brief to us:

Defendant had been previously convicted in Oklahoma State Court of first degree murder and is serving a life sentence on that conviction arising out of the death of Mrs. Don Bolding at Barstow,[5] Oklahoma fol-

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 371 (1970) provides:
   *Conspiracy to commit offense or to defraud United States*
      If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
      If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

2. 26 U.S.C. § 5845 (1970) defines the term "firearm" as including a shotgun with a barrel less than 18 inches long and a "bomb." 26 U.S.C. § 5861 (1970) provides in part:
   *Prohibited acts.* It shall be unlawful for any person—
      *       *       *       *       *
      (d) to receive or possess a firearm which is not registered to him in the Na-

tional Firearms Registration and Transfer Record; or
      *       *       *       *       *
      (f) to make a firearm in violation of the provisions of this chapter * * *.
   26 U.S.C § 5821 (1970) provides in part:
   *Making tax.*
      (a) *Rate.*—There shall be levied, collected, and paid upon the making of a firearm a tax at the rate of $200 for each firearm made.
      (b) *By whom paid.*—The tax imposed by subsection (a) of this section shall be paid by the person making the firearm.
   26 U.S.C. § 5822 (1970) provides in part:
   *Making.* No person shall make a firearm unless he has * * * (b) paid any tax payable on the making * * *.

3. 18 U.S.C. § 844(h) (1970) provides in part:
      Whoever—
      *       *       *       *       *
      (2) carries an explosive unlawfully during the commission of any felony which may be prosecuted in a court of the United States, shall be sentenced to a term of imprisonment for not less than one year nor more than ten years.

4. See statutes *supra* note 2.

5. This community is referred to in the record as Bristow, Oklahoma.

lowing the possession, making and transportation of the bomb and planting it in the Bolding pickup at Barstow. The Judgment from which this appeal is taken is based on that [sic] making and possession of the bomb and the conspiracy to make and possess a bomb, which was set in the Bolding pickup where Mrs. Bolding was killed.

Subsequent to indictment the action was transferred from Tulsa, Oklahoma, to Bismarck, North Dakota, for trial because of the extensive publicity the case had had in Oklahoma.

A co-conspirator and co-defendant, Archie Dale Miller, pled guilty to the conspiracy count and was sentenced. Brinlee, upon conviction, was sentenced to a total of 12 years of imprisonment, to "be consecutive to any other lawful sentence of confinement which has heretofore been imposed upon this defendant."

On appeal Brinlee has raised a series of questions, ranging a wide field. We have considered each of the issues raised but will discuss only those having sufficient merit to warrant such discussion.

The proofs adduced at trial may be very simply stated. In January of 1971 the defendant came to the Tahlequah, Oklahoma, apartment of Ralph Lee Hinkle, a local college student who had been employed by defendant and who lived in an apartment house owned by the defendant. Hinkle, a named co-conspirator, testified that defendant at this time brought with him four blocks of plastic explosives, identified as C-4, and some blasting caps, which were left in Hinkle's closet. Shortly thereafter Hinkle, at defendant's request, borrowed a 1969 Chevrolet pickup so that he (defendant) could "see how he could wire up some blasting caps to it." Defendant, Hinkle, and Miller drove to an abandoned house north of town. There Miller, a Viet Nam veteran who had had experience

with plastic explosives, instructed defendant on how to wire the car so that the blasting caps could be detonated through use of the ignition switch. Defendant also investigated under the pickup to see if he could remove "one of those rubber grommets that are under the body of a car." Subsequently, at Hinkle's apartment on February 1, 1971, defendant and Hinkle attached clamps to the blasting cap lead wires and taped the wires. Defendant had previously purchased these "alligator clips," [6] and it was later testified by an expert witness that "the lead wires or the leg wires of an electric blasting cap and two alligator clips * * * were recovered" by him at the scene of the explosion on February 2.

That night defendant and Hinkle drove to Bristow, Oklahoma, to the Bolding residence where defendant, with Hinkle standing nearby armed with a sawed-off shotgun, wired the Bolding truck and placed two blocks of the explosives beneath its seat. The resulting explosion resulted in the death heretofore described. Defendant's defense was an alibi, rejected by the jury.

■ We turn first to the claim of double jeopardy. The defendant cites to us such cases as In re Pratt, 66 Cal.2d 154, 56 Cal.Rptr. 895, 424 P.2d 335 (1967); Heldenbrand v. Mills, 476 P.2d 375 (Okl.Cr.1970), and Ex parte Nielsen, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1888), each of which expressed the principle that "The state will not be permitted to split or divide up an offense into divers parts and punish each moiety." [7] Such cases are inapposite to the situation before us. Here we have separate offenses: the elements of proof are dissimilar, and the proscriptions emanate from different sovereigns. Ferina v. United States, 340 F.2d 837, 839 (8th Cir.), cert. denied, 381 U.S. 902, 85 S. Ct. 1446, 14 L.Ed.2d 284 (1965). The Oklahoma state case involved both pre-

---

6. This is a "kind of * * * metal clothespin," "an electrical clip, [which] has a spring in it, [and] has teeth on the front of it where it clamps."

7. Heldenbrand v. Mills, 476 P.2d at 376.

meditation and death, but the federal, lack of registration, together with illegal possession and making. We find no element of double jeopardy in such disparate charges made by different sovereigns. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959).

■■ After Hinkle's direct examination defendant requested that the government produce all statements made by the witness at any time. In response the government produced statements made on March 31, 1972 and April 5, 1972 but stated that these statements contained not only information "about a number of other state offenses," but privileged matter as well, the statements, in fact, going "from horizon to horizon about a world of things." Accordingly the court was requested to examine them *in camera* and excise matter unrelated to the testimony of the witness. The court did so, made certain excisions, and the full and extire texts of the statements were sealed and form part of this record on appeal. We have examined the full texts of the statements. The excised materials do not relate to the events and activities testified to, but rather concerned other unlawful activities of Hinkle and Brinlee which we need not set forth here. The trial court did not commit error in either the procedure adopted [8] or in the determinations made. It was held in Scales v. United States, 367 U.S. 203, 258, 81 S. Ct. 1469, 1501, 6 L.Ed.2d 782 (1960), that "there can be no complaint by a criminal defendant that he has been denied the opportunity to examine statements by government witnesses which do not relate to the subject matter of their testimony * * *." *See also* Hance v. United States, 299 F.2d 389, 397 (8th Cir. 1962). The argument of defendant that he must be allowed "to participate in the determination of what is relevant or irrelevant" has no support in statutory authority or case precedent.

Defendant urges also that Hinkle's testimony was improperly received because, at the time he testified, "there was no evidence of a conspiracy and Hinkle was an admitted co-conspirator who was then allowed to testify to the various acts of himself and the Defendant which would establish the alleged conspiracy." Essentially the same argument is made with respect to the need for severance of the substantive charges, namely, that otherwise the government may "introduce evidence on the substantive charges by an alleged co-conspirator, which evidence has a tendency to establish the conspiracy, before it was established by other evidence."

■ The problem presented is framed in terms of order of proof. The order of proof in a conspiracy case need not follow a predetermined pattern. Often it is only after considerable testimony that the various factual elements form a discernible pattern. It is for this reason that we have held that the order of proof is a matter within the discretion of the court, with safeguards as to "connecting up." Fabian v. United States, 358 F.2d 187 (8th Cir.), cert. denied, 385 U.S. 821, 87 S.Ct. 46, 17 L.Ed. 2d 58 (1966). It is, of course, settled as well that in order that declarations of alleged co-conspirators may be admissible against a defendant, there must be independent evidence showing that there was, in fact, a conspiracy and the defendant's participation in it. Rizzo v. United States, 304 F.2d 810, 826 (8th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962); Ferina v. United States, 302 F.2d 95, 104–105 (8th Cir.), cert. denied, 371 U.S. 819, 83 S.Ct. 35, 9 L.Ed.2d 59 (1962). This rule must not, however, be confused. It applies only to out-of-court (hearsay) declarations of a co-conspirator. *E. g.*, Glasser v. United States, 315 U.S. 60, 73–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It does not exclude proof of a conspiracy by the

8. 18 U.S.C. § 3500(c) (1970).

direct testimony under oath of the parties to it, here Hinkle and Miller. Laughlin v. United States, 128 U.S. App.D.C. 27, 385 F.2d 287, 292 (1967), cert. denied, 390 U.S. 1003, 88 S.Ct. 1245, 20 L.Ed.2d 103 (1968); Smith v. United States, 224 F.2d 58, 60 (5th Cir.), cert. denied, 350 U.S. 885, 76 S.Ct. 138, 100 L.Ed. 780 (1955).

■ We do not find abuse of the discretion of the court as to the order of proof. The motion for severance of the substantive charges, asserted, as noted, on substantially identical grounds, was likewise subject to the discretion of the court, and we find no abuse in the ruling made.

■ Error is also asserted in that Mr. Casey, the explosives expert who inspected the bomb site, was permitted over objection to testify with accompanying photographs as to the wiring of the bomb (the alligator clips and the lead wires), where it was placed in the truck, how it was constructed, and that it was what is known as a "high velocity" type explosive, such as plastic or C–4 explosive, ignitable by electrically wired blasting caps. The defendant urges that this testimony was prejudicial and inflammatory because it suggested that someone had been killed as a result of the explosion, and that it was, as well, immaterial to the charges involved. It was the government's position that the destruction of the truck by the explosion of the bomb had been pleaded as an overt act, and, moreover, that the expert's findings were a corroboration of the previous evidence as to the nature of the explosive used, the placement of the bomb under the seat inside the truck, and the use of metal clips and lead wires.

The court was here faced with the delicate problem of weighing the probative value of the evidence against its possibly prejudicial effect. Both parties and the court were careful to keep from the jury the Oklahoma trial proceedings and result, and in its final charge, as to which no error is urged to us, the court warned the jury explicitly that the evidence of the explosion could be considered by them only with respect to the charges made in the indictment.

Under the facts before us as to the conduct of the trial, the charges made and the relevance of the evidence offered in support thereof, we find no error in the court's admission of the expert testimony. United States v. Cochran, 475 F.2d 1080, 1082 (8th Cir. 1973).

■ Defendant urges also that in the course of the final argument government counsel made an alleged prejudicial and inflammatory remark to the jury, suggesting that acquittal of the defendant might subject all "pickup" owners in the area to the danger of bombing.[9] Objection was made immediately, and mistrial prayed. The court felt that the argument made was "on the very, very edge of impermissible argument," and gave the jury a curative instruction, followed by government counsel's short statement to the jury in apology and explanation.

Although wide latitude is accorded counsel in argument, care must be taken to avoid any appeal to the self-interest or prejudice of the jury. There was here an obviously unplanned transgression by counsel, but in view of the prompt action of the court and in the light of all of the circumstances and "in the context of the entire trial"[10] we find no prejudicial error therein.

We have considered with care the remaining arguments tendered by the defendant but, upon the overwhelming proofs before us, find them without substantial merit. The judgment is, accordingly, affirmed.

---

9. "Well, if you turn him loose, ladies and gentlemen, and you set him in the street in Bismarck, perhaps we'd better notify the pickup [truck] owners in this area that this man is in the community."

10. United States v. Phillips, 482 F.2d 191, 196 (8th Cir. 1973).