**UNITED STATES of America,
Plaintiff,**

v.

**James W. JOHNSON, Defendant.**

**No. 3–74–Cr–50.**

United States District Court,
D. Minnesota,
Third Division.

Sept. 18, 1974.

Robert G. Renner, U. S. Atty., Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., for plaintiff.

Ronald I. Meshbesher, Minneapolis, Minn., for defendant.

## ORDER

DEVITT, Chief Judge.

Convicted of extortion under the Hobbs Act, 18 U.S.C. § 1951, defendant moves for Arrest of Judgment, Judgment of Acquittal or New Trial. Briefs have been lodged and argument heard.

Defendant's principal argument in support of its motion in Arrest of Judgment is that defendant was acquitted in a June 1974 trial in Anoka County State Court of kidnapping under substantially the same facts and that prosecution here on extortion constitutes double jeopardy

prohibited by the Fifth Amendment to the United States Constitution.

This argument is without merit. It is clear from the decided cases that federal and state governments may each prohibit the same acts and constitutionally prosecute violations thereof. The prosecutions here were by different sovereigns and for different crimes, one for kidnapping, the other for extortion. The United States Supreme Court has said that:

" * * * an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922)

This is still good law today. Abbate v. United States, 359 U.S. 187, 195, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959). United States v. Synnes, 438 F.2d 764 (8th Cir. 1971). On July 30, 1974, and again on August 29, 1974, our Circuit Court of Appeals reaffirmed its recognition of the vitality of the principal. United States v. Delay, 500 F.2d 1360 (8th Cir. 1974); United States v. Ackerson, 502 F.2d 300 (8th Cir. 1974).

Defendant's main argument in support of a new trial is that the court erred in instructing the jury on the defense of coercion. The court gave the essence of #13.14 from Devitt and Blackmar, Federal Jury Practice and Instructions. Defendant asked for this in his request XVI.

But defendant argues that the court's explanation of the instruction had the effect of hampering defense counsel's argument to the jury and shifted the burden of proof to the defendant. This objection was not made by counsel before the jury retired as required by Crim.Rule 51 (counsel only said, "the instruction was prejudicial, and I object to it." Transcript, p. 28, line 1). But notwithstanding, it appears from the transcript that at the end of the coercion instruction the court emphasized again the burden was still on the government to prove every element of the crime when it said:

"As stated to you before on several occasions, the burden is always on the prosecution to prove beyond a reasonable doubt every essential element of a crime charged, and the law never imposes upon a defendant the burden or duty of calling any witnesses, or producing any evidence."

So that there may be an orderly record, the complete instruction on coercion and the objection to it by defendant's counsel taken from the reporter's transcript are set out as follows:

*Coercion Instructions*

"Now, on this same subject of criminal intent, we come to the defense of coercion, which is one of the defenses, and may be the principal defense of the defendant Mr. Johnson. Since every crime requires a voluntary mind, it is a defense to a criminal charge if the act was not committed voluntarily but was the result of coercion, or compulsion or, as some of the lawyers referred to it, duress.

Now, I'm going to tell you what the law is with reference to coercion. Coercion or compulsion may provide a legal excuse for the crime charged in the indictment. In order, however, to provide a legal excuse for any criminal conduct, the coercion must be present and immediate and have had such a nature to induce a well-founded fear of impending death, or serious bodily injury, and there must be no reasonable opportunity to escape the compulsion without committing a crime.

If the evidence in the case should leave you with a reasonable doubt whether, at the time and place of the offense, the accused acted willingly and voluntarily—that is to say, whether the accused was forced, in effect, to commit or aid in the commission of the crime charged by coercion or compulsion then, of course, you should acquit the accused.

Let me see if I can explain this defense of coercion to you a little more.

Of course, the law does not countenance a person who is charged with a criminal act to merely say, "Somebody else made me do it." It's not enough to just assert that.

Four specific requirements of this defense must appear. In order to provide legal excuse for criminal conduct by the defense of coercion, there are four essentials:

Number One. The coercion to act must be present at the time.

Number Two. The danger must be immediate—a fear of future danger to life or body is not sufficient to relieve an accused of responsibility.

Number Three. The coercion must be of such a nature as to induce a well-founded fear of impending death or serious bodily injury, and

Number Four. There must be no reasonable opportunity to escape the compulsion without committing the crime; or to say it otherwise, that there is no reasonable alternative to committing the crime—you can't run away, you can't call the police, you can't do anything except commit the crime.

When the lawyers were arguing this morning, I was trying to think of some example, by way of illustration, to bring home to you the principles involved in the application of this doctrine of coercion. When Mr. Meshbesher brought up the situation of Patricia Hearst, who was allegedly kidnapped months ago, you know, and then a few months later one of these bank cameras took a picture of some bank robbers, and there was Patricia Hearst—you maybe saw it—with a gun, and over some distance from her was the leader of the Symbionese Liberation Force, and it appeared, from the picture, that the leader of the band had the gun pointed on Patricia Hearst. And there was speculation as to whether or not she was actually participating or whether or not she was an unwilling victim, whether she was being coerced or whether she was under duress.

Well, I don't know whether she was or not. But that example of Patricia Hearst, while only an example, probably points up the ideal case for the application of the doctrine of coercion because, assuming that the leader was pointing his gun at Patricia, you might conclude that the coercion was present, that the danger was immediate and the danger was really for her life and limb and she had no alternative—she couldn't call the police, or if she could, they couldn't do anything about it at the time, or she couldn't run away.

Of course, that's only an example. I do not mean to imply to you that you need to find all that in order to justify the application of this defense here. I only point it out to you as an example given by Mr. Meshbesher of how these four requirements are necessary and how, in that example, they are present.

So if you find all of these essentials present, then you should acquit Mr. Johnson. Of course, he is the only one who asserts this defense. The other defendant does not do it.

But if you find that any one of these requirements is not present, then you may conclude that the defendant Johnson did not commit the alleged criminal act under coercion.

As stated to you before on several occasions, the burden is always on the prosecution to prove beyond a reasonable doubt every essential element of a crime charged, and the law never imposes upon a defendant the burden or duty of calling any witnesses, or producing any evidence." (Transcript, p. 13, 14, 15, 16)

*Counsel's Objection*

"MR. MESHBESHER: I object to the Court's instruction on coercion. It went far beyond what I thought the Court was going to give. As I understood, the Court indicated it was going to give my Request Number XVI directly from *Devitt and Blackmar*. The Court did indicate it would give it in principle, but the Court went way beyond it, and I think commented upon the evidence and gave some examples, which I wasn't aware the Court was going to do, and I was advised the Court only was going to give them in principle; the instruction.

THE COURT: Let's get that straight right now. The Court said it wasn't only going to give that. I told you I was going to give the principle behind my instruction on coercion. I said I wasn't going to comment on the evidence, or discuss it.

MR. MESHBESHER: The Court did say it would give it in principle, and I asked the Court later what the verbiage was going to be, and you indicated you could give it in principle and would cover those elements.

THE COURT: That's right.

MR. MESHBESHER: And I did persist in trying to get an instruction from the Court so I would know how to argue the matter and the Court did not give me the exact verbiage.

THE COURT: No, I didn't. I mean, I didn't know the verbiage until now. It wasn't written out.

MR. MESHBESHER: I appreciate that. But in light of my instruction, and in light of my information before I argued the case, the instruction was prejudicial, and I object to it." (Transcript, p. 27, 28)

I am satisfied from an examination of the transcript that the Court gave a proper statement of the law on coercion and that the instruction stated, at least at three places, one of which was in connection with the coercion instruction itself, that the government had the burden to prove the case beyond a reasonable doubt and that such burden did not shift to the defendant. (See Reporter's transcript, p. 5, line 14; p. 12, line 5; p. 16, line 16).

█ Instructions must be viewed as a whole, not piecemeal. The "court is entitled to use its own language" and it "is enough that the charge adequately and correctly covers the substance of the requested instructions." United States v. Nance, et al., 1974, 502 F.2d 615 (8th Cir. 1974) and authorities there cited.

█ Defendant in his post trial brief (but not at trial) objects to the court's use of the example of the kidnapped Patricia Hearst as illustrative of the coercion instruction. But this was prompted by counsel's bringing up the Patricia Hearst situation in his argument. At all events, use of examples to amplify a charge is proper. U. S. v. Haley, 452 F.2d 398 (8th Cir. 1971), United States v. Cole, 453 F.2d 902 (8th Cir. 1972).

█ Defendant argues that the court erred in not allowing the testimony of Danny Caliendo as to the circumstances surrounding his intrusion into the Kronholm residence.

Caliendo testified at the state kidnapping trial and defense counsel said Caliendo's testimony in the federal trial would be substantially the same. The court read Caliendo's state court trial testimony. Caliendo said he came to St. Paul on his own to kidnap Mrs. Kronholm and thought he could do a better job of it than Johnson did. He did not know Johnson or any other persons involved in the abduction of Mrs. Kronholm. He had only read about it in the newspapers. He said nobody hired him to do the job. He didn't know any "Mike" except for a high school friend. Caliendo entered the Kronholm house, was cornered there, disarmed two local police officers, escaped and was subsequently shot by F.B.I. agents. He pled guilty to shooting the federal officers and is now undergoing mental examination at the Springfield, Missouri Federal Medical Facility, precedent to the imposition of a final sentence by Judge Earl Larson.

There is no evidence that Caliendo's later intrusion into the Kronholm house was in any way related to the previous Kronholm abduction or to the "Mike" story offered as a defense by Johnson, and the court sustained objection to testimony about it because it was irrelevant.

Defendant's counsel had a nebulous theory that Caliendo was the agent of Chicago gangsters sent to Minnesota to do a follow-up on the kidnapping job muffed by Johnson and this was consistent with the "Mike" story told by Johnson and that the evidence should have

been received supportive of that theory. But while such is a plausible theoretical story, there was no substantial credible evidence to support it and to admit it would confuse rather than enlighten the jury. Trial judges have a wide discretion to rule on such relevancy questions and I am satisfied exclusion of the Caliendo intrusion evidence was correct and a proper exercise of discretion. Cotton v. United States, 361 F.2d 673, 676.

Defendant states other grounds for post-trial relief, all of which have been studied and found to be without merit.

All post-trial motions are

Denied.