UNITED STATES of America,
Appellee,

v.

James W. JOHNSON, Appellant.

No. 74–1764.

United States Court of Appeals,
Eighth Circuit.

Submitted March 11, 1975.

Decided May 13, 1975.

Certiorari Denied Oct. 6, 1975.

See 96 S.Ct. 112.

210

Ronald Meshbesher, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, ROSS, Circuit Judge, and TALBOT SMITH, Senior District Judge.*

VAN OOSTERHOUT, Senior Circuit Judge.

James W. Johnson has taken a timely appeal from his conviction by a jury verdict on an indictment charging extortion in violation of 18 U.S.C. § 1951(a), the Hobbs Act. Defendant's post-trial motions in arrest of judgment, judgment of acquittal or for a new trial were denied by the trial court[1] in an Order reported as United States v. Johnson, 381 F.Supp. 210 (D.Minn.1974). We affirm.

---

* Talbot Smith, Senior District Judge, Eastern District Michigan, sitting by designation.

1. The Honorable Edward J. Devitt, Chief Judge, District of Minnesota.

Defendant admits and the evidence shows that he and one Fritz Helberg took part in the March 15, 1974, abduction of Mrs. Gunnar Kronholm, the wife of the president of the Drover State Bank of South St. Paul, Minnesota, and the subsequent extortion of $200,000 through demands made on Mr. Kronholm. Prior to the instant federal prosecution for extortion defendant was acquitted by a Minnesota State court jury on a kidnapping charge arising out of the same occurrences which resulted in this Hobbs Act prosecution. Defendant's principal defense in the state court was the same as presented in the instant case, that of duress. Defendant's story, which apparently was believed by the state court jury, was that a man named "Mike" contacted him in response to an ad defendant had placed in a local newspaper seeking financing for construction of a restaurant and bar. "Mike" allegedly coerced defendant into participating in the kidnapping and extortion plot by making threats of bodily injury to defendant and his family. "Mike" has never been identified. Other pertinent facts will be developed in connection with the discussion of the issues raised.

Appellant presents the following issues for review:

I. Is the federal government barred by collateral estoppel or double jeopardy from prosecuting defendant on an extortion charge where a state court jury has previously acquitted defendant on a factually related kidnapping charge?

II. Did the trial court commit plain error in failing to instruct the jury that the Government had the burden to prove no duress beyond a reasonable doubt?

III. Did the trial court commit prejudicial error in failing to instruct the jury on the weight to be given an accomplice's testimony?

IV. Did the trial court err in excluding certain testimony which was relevant to defendant's defense of duress?

V. Did the Government err in bringing charges under 18 U.S.C. § 1951(a) rather than the more specific federal kidnapping statute?

VI. Is the evidence insufficient to establish that the defendant's act of extortion was on the Drover State Bank rather than on Gunnar Kronholm, the individual?

I.

Defendant contends his acquittal by a jury in a June 1974 Minnesota state court trial of kidnapping constitutes a double jeopardy bar to the instant Hobbs Act prosecution. Defendant's argument here is two-pronged. First, defendant argues that collateral estoppel operates to estop the Government from relitigating the issue of duress which was decided favorably to defendant in the state court acquittal. Second, even if collateral estoppel is not available, the doctrine of dual sovereignty, which allows successive prosecution by state and federal governments of crimes arising out of the same occurrence, is no longer viable in view of recent Supreme Court decisions.

Defendant recognizes that application of collateral estoppel requires an identity of parties in the prior and subsequent litigation. Minnesota was the plaintiff in the state kidnapping case and the federal Government is the plaintiff in the instant case. Defendant attempts to leap this hurdle by claiming that the federal government was in reality the prosecutor in the Minnesota kidnapping case because of substantial federal participation by F.B.I. agents and the United States Attorney in the case. A federal prosecution following a state prosecution involves two different sovereigns and, thus, different parties. Ferina v. United States, 340 F.2d 837, 839 (8th Cir. 1965). "Mere use in the state proceedings of the fruits of the mutual investigations by [federal agents], with-

out more, does not infect the separate sovereignty of that prosecution, nor bind the federal government in any manner to the issues so resolved by the state judgment." *Id.* at 840. In the instant case evidence obtained by F.B.I. investigations was used to obtain state indictments and at trial. F.B.I. agents who investigated the case testified in the state trial. The United States Attorney's office cooperated with the county attorney during the state prosecution but did not influence the management of the state's case.[2] We do not think that the level of cooperation shown in the record rises to the level of participation claimed by defendant. It certainly did not make the federal government a party to the case to the extent that the identity of parties requirement for collateral estoppel is satisfied.

The "dual sovereignty" theory is well established in American criminal jurisprudence. In 1922 the Supreme Court clearly stated in United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922) that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." This principle has been since re-affirmed by the Supreme Court and followed in this circuit. Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); Abbate v. United States, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); United States v. Ackerson, 502 F.2d 300, 302 (8th Cir. 1974); United States v. Delay, 500 F.2d 1360, 1362 (8th Cir. 1974). We think *Abbate, supra,* is controlling here. In *Abbate* the Supreme Court specifically held

that the fifth amendment does not bar a federal conviction which follows a state conviction for the same act. The fact that defendant in the instant case was acquitted of the state charge does not distinguish *Abbate.* *See* United States v. Smaldone, 485 F.2d 1333, 1343 (10th Cir. 1973).

Appellant argues that *Lanza, Bartkus,* and *Abbate* are of questionable validity in view of more recent Supreme Court decisions such as Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970); and Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Although the doctrine of dual sovereignty has been eroded somewhat in recent years,[3] we do not read *Ashe, Waller, Benton,* or any other Supreme Court case as rejecting *Abbate.* *See* Martin v. Rose, 481 F.2d 658, 659–660 (6th Cir. 1973), cert. denied 414 U.S. 876, 94 S.Ct. 86, 38 L.Ed.2d 121 (1973).

■ There is yet another reason defendant's double jeopardy argument must be rejected. The state offense of kidnapping and the federal offense of extortion are separate crimes requiring proof of different elements by the prosecution. Double jeopardy does not attach where the offenses are separate. Brinlee v. United States, 496 F.2d 351, 353 (8th Cir. 1974); Ferina v. United States, *supra,* 340 F.2d at 839. *See* Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

II.

■ Defendant complains that the trial court's instructions on duress had

---

**2.** Also assigned as participation by the Government in the trial is an alleged negotiated plea bargain arrangement between the State's attorney and the United States Attorney whereby codefendant Helberg would have all federal charges dismissed if he pleaded guilty in state court. Defendant also claims that the Government was instrumental in securing a plea bargain offer through the State's attorney whereby he would receive a 15 year limitation of sentence and a dismissal of all federal charges if he would plead guilty to the

state kidnapping charge. Defendant cites no authority holding such procedures to be "participation" by the federal government in state proceedings nor have we found any such authority.

**3.** *See* Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

the effect of shifting the burden of proof to defendant to prove the elements of this defense. The objected to instruction is set out in its entirety in the trial court's reported Order. United States v. Johnson, *supra,* 381 F.Supp. at 211–212. Defense counsel objected on the ground that it went beyond the instruction requested, 1 Devitt and Blackmar, Federal Jury Practice and Instructions § 13.14 (2d ed. 1970), by giving examples. Counsel concluded by saying "the instruction was prejudicial and I object to it." Nowhere does a burden of proof objection appear. In the absence of specific grounds for an objection which would call the trial court's attention to the alleged error before the jury begins its deliberations, nothing is preserved for review. United States v. Sargis, 460 F.2d 1329, 1330 (8th Cir. 1972); Rule 30, Fed.R.Crim.P. Moreover, the instruction read as a whole does not constitute plain error under Rule 52(b), Fed.R.Crim.P. In concluding the objected to instruction and elsewhere in the instructions the court clearly placed the burden on the Government to prove all essential elements of the crime beyond a reasonable doubt. This would include the element of willfulness in carrying out the criminal acts.

### III.

Defendant contends that the trial court committed prejudicial error by refusing to give certain requested instructions on accomplice testimony. Defendant argues that the jury could have found from the evidence that either one or both of the Kronholms were accomplices in the kidnapping and extortion plot. Accordingly, the defendant requested the court to define accomplices and instruct that if the jury found any witness to be an accomplice such testimony must be viewed with distrust and caution. Helberg was named in an instruction as an admitted accomplice whose testimony should be viewed with caution but the following requested instruction was denied:

If you find that either Mr. or Mrs. Kronholm were accomplices within the meaning of these instructions, you must view their testimony with distrust and receive it with caution and weigh it with great care.

The standard cautionary instruction on accomplice testimony was given by the court. Included was a statement that testimony by Helberg "and that of any other accomplice" should be viewed with caution.

■■■ Where the evidence is unclear on the question of the status of witnesses as accomplices, it is not reversible error to refuse to name such witnesses as accomplices. United States v. Callis, 390 F.2d 606 (6th Cir. 1968); Gardner v. United States, 283 F.2d 580, 581–582 (10 Cir. 1960). The court gave a cautionary instruction on the testimony of "any other accomplice." We think a cautionary instruction naming the Kronholms as possible accomplices was unwarranted. Evidence that they were accomplices is speculative at best. The instruction given adequately calls the jury's attention to the weight that should be given to the testimony of any witness they found to be an accomplice. There was no error in denying the requested instruction.

### IV.

Defendant argues that the trial court erred in not admitting into evidence testimony of Danny Caliendo and a police officer relating to Caliendo's criminal entry into the Kronholm's residence almost two months after the abduction of Mrs. Kronholm. The trial court excluded the proffered testimony on the ground it was irrelevant. Defendant contends the testimony was relevant to his defense of duress.

The transcript of Caliendo's testimony in the state trial was received by the court as an offer of proof of his expected testimony. Caliendo claimed he came to Minnesota from Chicago in early May 1974 to kidnap Mrs. Kronholm. He subsequently decided to commit a burglary at the Kronholm residence rather than

kidnap Mrs. Kronholm. Caliendo was discovered in the basement of the Kronholm home May 8, 1974, but escaped after disarming two police officers. The next day F.B.I. officers shot and seriously wounded Caliendo as he walked along a highway near the Kronholm home.[4] Caliendo, in an excited utterance shortly after being shot, told officers he did not come to Minnesota to commit a kidnapping, burglary or armed robbery. The offer of proof also shows that Caliendo did not know defendant or any of the other persons involved in the abduction of Mrs. Kronholm. He did admit knowledge of the abduction of Mrs. Kronholm but only what he had read in newspaper accounts. He did not know anyone named "Mike."

 Defendant recognizes that a trial court has broad discretion in determining relevancy of proposed evidence, United States v. Mitchell, 463 F.2d 187, 191 (8th Cir. 1972), but argues that the court abused its discretion in excluding the offered testimony. Defendant's theory is that Caliendo was one of "Mike's" boys and was in Minnesota to enforce "Mike's" threats against defendant after the defendant eventually admitted his participation in the kidnapping and extortion plot. We see no connection between defendant's participation in the kidnapping and extortion plot and Caliendo's criminal activity in the Kronholm home or even his presence in Minnesota. It is mere speculation to connect Caliendo with the alleged "Mike" and the kidnapping of Mrs. Kronholm or a shooting incident following the abduction in which defendant was severely injured. Under the circumstances the trial court's action excluding the proffered testimony was well within its broad discretionary powers. *See* Cotton v. United States, 361 F.2d 673, 676 (8th Cir. 1966).

## V.

 Defendant asserts that his illegal activity, if any, was contrary to two federal statutes, 18 U.S.C. § 1951(a) (Hobbs Act) and 18 U.S.C. § 1201 (kidnapping). Citing Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), defendant argues that he should have been charged with violation of the more specific statute (kidnapping) rather than the general Hobbs Act statute forbidding extortion. Such contention is without merit in view of defendant's own admission that federal kidnapping charges were not filed because there was no interstate transportation of the victim.[5]

## VI.

 Defendant's final argument is that prosecution under 18 U.S.C. § 1951(a) was improper because the evidence does not support a finding that the extortion was against the Drover State Bank. It is defendant's contention that the evidence overwhelmingly establishes that the extortion was directed against Mr. Kronholm personally and not toward the bank. However, it is not for us to weigh the evidence. In the event the jury in a criminal case has made a finding of guilt, the verdict must be sustained on review if, taking the view most favorable to the Government, there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Madden, 482 F.2d 850, 851 (8th Cir. 1973). When Gunnar Kronholm following the abduction of Mrs. Kronholm told the extorting caller that he did not have $400,000, the caller said "get it from the bank." The money was in fact paid by the bank without a promissory note being signed by Kronholm. Helberg testified that Johnson mentioned a bank president's wife as an abduction victim because a bank president could get a lot of money from a bank. A Friday was chosen for execution of the plot because it was a payday and more cash would be on hand. There is substantial evidence to support a finding

---

4. Caliendo is currently serving a five-year sentence as a result of his conviction on a plea of guilty to assault on an F.B.I. agent in connection with this incident.

5. We do not reach the issue of whether the kidnapping statute should prevail over the extortion statute when the facts would support a conviction under each offense.

that the extortion was directed against the Drover State Bank. No error of law appears.

The judgment of conviction is affirmed.

Affirmed.