### State of Connecticut *v.* Charles Moeller

Cotter, C. J., Loiselle, Bogdanski, Longo and Peters, Js.

Argued March 14—decision released June 19, 1979

*Thomas L. Nadeau,* with whom, on the brief, was *Theodore I. Koskoff,* for the appellant (defendant).

*Donald A. Browne,* state's attorney, for the appellee (state).

Longo, J. The single issue presented by this appeal is whether the trial court erred in denying the defendant's motion to dismiss, thus overruling the defendant's claim that a state prosecution, following a federal court jury acquittal regarding essentially the same alleged criminal conduct, would violate certain of the defendant's rights secured by the state and federal constitutions.

We briefly recite those facts necessary to a resolution of this issue: On the evening of March 1, 1975, a fire totally destroyed a large manufacturing facil-

ity in Shelton, known as Plant No. 4 of the Sponge Rubber Products Company. This incident resulted in an extensive investigative effort by both federal and state authorities which led to a federal indictment and the arrest of ten individuals, including the defendant Moeller. Subsequently, a lengthy federal trial resulted in the conviction of various of the federal defendants.[1] On January 22, 1976, the defendant Moeller was acquitted by the federal jury of all of the four charges lodged against him, and on January 27, 1976, a formal judgment of acquittal was rendered by the United States District Court (Newman, J.) as to the defendant. Among the charges upon which the defendant was acquitted was an arson conspiracy count under 18 U.S.C. §§ 371, 1952 and 2.

Thereafter, on May 3, 1977, the defendant was charged in the Superior Court, in a two-count information, with conspiracy to commit arson in the first and second degrees, in violation of §§ 53a-48, 53a-111 and 53a-112 of the General Statutes, for his alleged participation in the Shelton Sponge Rubber Products Company fire. The state's application for a bench warrant, the supporting affidavit, and the subsequently filed information make clear that the same conspiracy as charged in the federal indictment is involved in the pending state prosecution. The defendant pleaded not guilty to the information. On May 25, 1977, the defendant filed a motion to dismiss the information based upon the "double jeopardy" provision of the fifth amendment to the United States constitution,[2] the due process and equal protection clauses of the fourteenth amend-

---

[1] See *United States* v. *Bubar,* 567 F.2d 192, 196 (2d Cir. 1977).

[2] "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. Const., amend. V.

ment to the constitution, and the due process clause of article first § 8, of the Connecticut constitution. On December 21, 1977, the trial court denied the defendant's motion. The defendant has appealed to this court from the denial of his motion to dismiss.

Both the defendant and the state have assisted the court in focusing sharply upon the issue to be resolved; the parties have candidly argued and thoroughly researched the legal principles that must, of necessity, illuminate and guide our decision. The defendant mounts an attack from both constitutional and statutory quarters, arguing that the trial court erred in denying his motion to dismiss, principally because the cases upon which the court relied, *Bartkus* v. *Illinois,* 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959), and *Abbate* v. *United States,* 359 U.S. 187, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959), and their numerous progeny, establishing an exception to the rule against double jeopardy commonly referred to as the "doctrine of dual sovereignty," have been so enfeebled and eroded as to lack any binding force. Additionally, it is argued that, consistent with the intention of various legislative enactments and court decisions of other states emphasizing the "individual protection" which the double jeopardy clause was meant to foster, a successive state prosecution following a federal court acquittal is barred. The defendant finally argues that the doctrine of collateral estoppel, as constitutionally embodied in the double jeopardy clause, bars the relitigation by the state of the same operative facts upon which the defendant had previously been acquitted by a federal jury. The state responds that the established law on the issue presented is unequivocal and clear in holding that the same act may constitute a violation of both federal and state

laws, and neither a conviction nor an acquittal in federal or state court bars a subsequent prosecution in the other court system arising from the same transaction or event. We agree.

## I

In *Bartkus* v. *Illinois*, 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959), and *Abbate* v. *United States*, 359 U.S. 187, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959), the United States Supreme Court reaffirmed the well-established principle that a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one.[3] The basis for the court's decision, establishing what has been termed the "dual sovereignty" concept; see *United States* v. *Wheeler*, 435 U.S. 313, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978); was that prosecutions under the laws of separate sovereigns do not, in the language of the fifth amendment, "subject [the defendant] for the same offense to be twice put in jeopardy": "An offence, in its legal signification, means the transgression of a law. . . . Every citizen of the United

---

[3] Although the problems arising from concurrent federal and state criminal jurisdiction had been noted earlier; see *Houston* v. *Moore*, 18 U.S. (5 Wheat.) 1, 5 L. Ed. 19 (1820); the court did not clearly address the issue until *Fox* v. *Ohio*, 46 U.S. (5 How.) 410, 12 L. Ed. 213 (1847); *United States* v. *Marigold*, 50 U.S. (9 How.) 560, 13 L. Ed. 257 (1850); and *Moore* v. *Illinois*, 55 U.S. (14 How.) 13, 14 L. Ed. 306 (1852), in the mid-nineteenth century. Those cases upheld the power of states and the federal government to make the same act criminal; in each case the possibility of consecutive state and federal prosecutions was raised as an objection to concurrent jurisdiction, and was rejected by the court on the ground that such multiple prosecutions, if they occurred, would not constitute double jeopardy. The first case in which actual multiple prosecutions were upheld was *United States* v. *Lanza*, 260 U.S. 377, 43 S. Ct. 141, 67 L. Ed. 314 (1922), involving a prosecution for violation of the Volstead Act, c. 85, 41 Stat. 305, after a conviction for criminal violation of liquor laws of the state of Washington.

States is also a citizen of a State or territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either. The same act may be an offence or transgression of the laws of both. . . . That either or both may (if they see fit) punish such an offender, cannot be doubted. Yet it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offenses, for each of which he is justly punishable." *Moore* v. *Illinois,* 55 U.S. (14 How.) 13, 19–20, 14 L. Ed. 306 (1852).

The court in *Abbate* found further support for the "dual sovereignty" concept by noting the "undesirable consequences" that would inhere in imposing a double jeopardy bar upon state-federal or federal-state prosecutions. Prosecution by one sovereign for a minor offense might bar prosecution by the other for a much graver one, and the court clearly took the position that a federal prosecutor has no authority to bargain away a state's power to enforce its criminal laws. See also *United States* v. *Wheeler,* supra, 318.

Finally, *Bartkus* and *Abbate,* although not weathering the years without criticism,[4] rest on the basic structure of our federal system, in which the states and the national government are separate political communities. State and federal governments "[derive] power from different sources," each from the organic law that established it. *United States*

---

[4] See, e.g., Brant, "Overruling *Bartkus* and *Abbate*: A New Standard for Double Jeopardy," 11 Washburn L.J. 188 (1972); Recent Developments, 18 Vill. L. Rev. 491 (1973); Recent Decisions, 12 Duq. L. Rev. 365 (1973); Comment, "Successive Prosecutions by Two Sovereigns After *Benton* v. *Maryland,*" 66 Nw. U.L. Rev. 248 (1971); Recent Cases, 39 Cinn. L. Rev. 799 (1970).

v. *Lanza,* 260 U.S. 377, 382, 43 S. Ct. 141, 67 L. Ed. 314 (1922). Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each "is exercising its own sovereignty, not that of the other." Ibid. "And while the States, as well as the Federal Government, are subject to the overriding requirements of the Federal Constitution, and the Supremacy Clause gives Congress within its sphere the power to enact laws superseding conflicting laws of the States, this degree of federal control over the exercise of state governmental power does not detract from the fact that it is a State's own sovereignty which is the origin of its power." *United States* v. *Wheeler,* supra, 320.

## II

The defendant must acknowledge that his claim of double jeopardy, arising from the pending state prosecution, is, as a matter of federal constitutional law, foreclosed under the rationale of *Bartkus* and *Abbate.* It is not correct to claim, however, as does the defendant, that these cases no longer represent the United States Supreme Court's view of the concept of "dual sovereignty," or that these cases have lost their viability concerning successive prosecutions under the double jeopardy clause. The continued validity and propriety of the "dual sovereignty" concept was recognized and affirmed by the unanimous decision of the Supreme Court in *United States* v. *Wheeler,* supra, and has been continuously reaffirmed by the decisions of the United States Courts of Appeals. *Wheeler,* holding that the double jeopardy clause did not bar the prosecution of an Indian in a federal court when he had

previously been convicted in a tribal court of a lesser included offense arising out of the same incident, discusses *Bartkus* and *Abbate* at length, clearly regarding them as still correctly stating the law, and unequivocally reaffirms the dual sovereignty doctrine which prevents the imposition of the double jeopardy bar.

Moreover, almost every federal circuit has rejected claims identical to those raised by the defendant Moeller, thereby permitting successive state-federal or federal-state prosecutions. See *United States* v. *Martin*, 574 F.2d 1359 (5th Cir. 1978); *United States* v. *Frumento*, 563 F.2d 1083 (3d Cir. 1977); *United States* v. *Cordova*, 537 F.2d 1073 (9th Cir. 1976); *United States* v. *James*, 532 F.2d 1161 (7th Cir. 1976); *United States* v. *Villano*, 529 F.2d 1046 (10th Cir. 1976); *United States* v. *Johnson*, 516 F.2d 209 (8th Cir. 1975); *Martin* v. *Rose*, 481 F.2d 658 (6th Cir. 1973); *United States* v. *Barone*, 467 F.2d 247 (2d Cir. 1972); *United States* v. *Smith*, 446 F.2d 200 (4th Cir. 1971); *United States* v. *Regan*, 273 F. 727 (1st Cir. 1921).[5]

Notwithstanding this universally accepted principle of federal law, the defendant argues that the principle allowing successive prosecutions has been eroded by three subsequent decisions of the United States Supreme Court, which, it is claimed, suggest that the attitude of the court may have changed

---

[5] The substantial majority of state courts also adhere to this view. See, e.g., *People* v. *Hines*, 572 P.2d 467 (Colo. 1977); *State* v. *Rogers*, 90 N.M. 604, 566 P.2d 1142 (1977); *State* v. *Forbes*, 348 So. 2d 983 (La. 1977); *Crane* v. *State*, 555 P.2d 845 (Nev. 1976); *Stathes* v. *State*, 29 Md. App. 474, 349 A.2d 254 (1975); *State* v. *Turley*, 518 S.W.2d 207 (Mo. App. 1974); *Klein* v. *Murtagh*, 44 App. Div. 2d 465, 355 N.Y.S.2d 622 (1974); *People* v. *Belcher*, 11 Cal. 3d 91, 520 P.2d 385 (1974); *State* v. *Cooper*, 54 N.J. 330, 255 A.2d 232 (1969); *State* v. *Castonguay*, 240 A.2d 747 (Me. 1968).

since *Bartkus* and *Abbate*. Those decisions are *Benton* v. *Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *Waller* v. *Florida*, 397 U.S. 387, 90 S. Ct. 1184, 25 L. Ed. 2d 435 (1970); and *Ashe* v. *Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). We cannot agree with the defendant's interpretation of those cases. In *Benton* the Supreme Court firmly established that the application of the fifth amendment guarantee against double jeopardy is enforceable against the states through the fourteenth amendment, but the case has no further application to the case at bar. In *Waller* the court held that a single sovereign, there the state, could not maintain two separate prosecutions for an offense and an included offense. Here, we have independent sovereigns prosecuting for different offenses, each offense being peculiar to the separate sovereign. In *Ashe,* upon a theory of collateral estoppel, it was held that a single sovereign cannot prosecute for separate offenses occurring in a single event where the result of the first prosecution collaterally and undeniably established the innocence of the accused on the second charge. This again, is not our case.[6]

---

[6] The defendant argues that the state, pursuant to *Ashe* v. *Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), is collaterally estopped from "relitigating" the facts upon which he was acquitted in federal court. We disagree. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the *same parties* in any future law suit." (Emphasis added.) *Ashe* v. *Swenson,* supra, 443; see *Slattery* v. *Maykut,* 176 Conn. 147, 156–57, 405 A.2d 76 (1978). The application of collateral estoppel thus requires an identity of parties in the prior and subsequent litigation. In this case, the federal government is neither the same as nor in privity with the state of Connecticut. In such circumstances, the state is not collaterally estopped from maintaining a prosecution against the defendant. *Turley* v. *Wyrick,* 554 F.2d 840, 842 (8th Cir. 1977);

We thus decline the defendant's invitation to construe *Benton, Waller* and *Ashe* as cases anticipatory of a rule prohibiting all but a single prosecution regardless of considerations concerning different laws and the rights of separate sovereigns. The courts that have considered the precise claim made by the defendant concerning the effect of these cases on *Bartkus* and *Abbate* have specifically rejected the argument. *Hutul* v. *United States,* 582 F.2d 1155, 1157 (7th Cir. 1978); *United States* v. *Wallace,* 578 F.2d 735 (8th Cir. 1978); *United States* v. *Johnson,* 516 F.2d 209 (8th Cir. 1975); *Martin* v. *Rose,* 481 F.2d 658 (6th Cir. 1973); *United States* v. *Crosson,* 462 F.2d 96 (9th Cir. 1972); *United States* v. *Synnes,* 438 F.2d 764 (8th Cir. 1971); *State* v. *Fletcher,* 26 Ohio St. 2d 221, 224, 271 N.E.2d 567 (1971); *Breedlove* v. *State,* 470 S.W.2d 880, 882 (Tex. Crim. App. 1971); *Bankston* v. *State,* 236 So. 2d 757, 760 (Miss. 1970); *State ex rel. Cullen* v. *Ceci,* 45 Wis. 2d 432, 457, 173 N.W.2d 175 (1970). A compilation of additional cases in accord with those cited may be found in annot., 18 A.L.R. Fed. 393.

Furthermore, the defendant's argument that the United States Supreme Court may have "changed its mind" concerning *Bartkus* and *Abbate* is, at the least, not aided by the fact that that court has con-

---

*United States* v. *Johnson,* 516 F.2d 209, 211 (8th Cir. 1975); *Martin* v. *Rose,* 481 F.2d 658, 660 (6th Cir.), cert. denied, 414 U.S. 876, 94 S. Ct. 86, 38 L. Ed. 2d 121 (1973); *Ferina* v. *United States,* 340 F.2d 837, 839 (8th Cir.), cert. denied, 381 U.S. 902, 85 S. Ct. 1446, 14 L. Ed. 2d 284 (1965); *United States* v. *Wapnick,* 315 F.2d 96 (2d Cir. 1963); *Rios* v. *United States,* 256 F.2d 173 (9th Cir. 1958); *State* v. *Smith,* 359 So. 2d 160, 163 (La. 1978); *State* v. *West,* 260 N.W.2d 215, 219 (S.D. 1977); *State* v. *Rogers,* 90 N.M. 604, 607, 566 P.2d 1142 (1977); *Commonwealth* v. *Studebaker,* 362 A.2d 336 (Pa. Super. 1976); *Klein* v. *Murtagh,* 44 App. Div. 2d 465, 469, 355 N.Y.S.2d 622 (1974).

sistently denied review, most recently on February 20, 1979, without a single dissent, in appeals involving precisely the same multifaceted attack made by the present defendant challenging the continuing authority of *Bartkus* and *Abbate*. See *Hutul* v. *United States,* 582 F.2d 1155 (7th Cir.), cert. denied, 440 U.S. 911, 99 S. Ct. 1222, 59 L. Ed. 2d 459 (1979) (leaving intact ruling that no double jeopardy violation inheres in successive prosecutions); *MacDonald* v. *United States,* 585 F.2d 1211 (4th Cir. 1978), cert. denied, 440 U.S. 961, 99 S. Ct. 1504, 59 L. Ed. 2d 774 (1979) (leaving intact ruling that collateral estoppel no bar to successive prosecution); *Parker* v. *United States,* 582 F.2d 953 (5th Cir. 1978), cert. denied, 440 U.S. 946, 99 S. Ct. 1424, 59 L. Ed. 2d 635 (1979) (leaving intact ruling that collateral estoppel no bar to successive prosecution).[7]

## III

The defendant finally assigns significant emphasis to the decisions of some state courts,[8] and a number of legislative enactments, that have, pursuant to particular state constitutions or by statute,

[7] See also *Millhouse* v. *United States,* 563 F.2d 1083 (3d Cir. 1977), cert. denied, 434 U.S. 1072, 98 S. Ct. 1256, 55 L. Ed. 2d 775 (1978); *Sills* v. *United States,* 563 F.2d 1083 (3d Cir. 1977), cert. denied, 434 U.S. 1072, 98 S. Ct. 1258, 55 L. Ed. 2d 776 (1978); *United States* v. *Kerrigan,* 514 F.2d 35 (9th Cir. 1975), cert. denied, 423 U.S. 924, 96 S. Ct. 266, 46 L. Ed. 2d 249 (1975); *United States* v. *Worth,* 505 F.2d 1206 (10th Cir. 1974), cert. denied, 420 U.S. 964, 95 S. Ct. 1358, 43 L. Ed. 2d 443 (1975); *United States* v. *Burke,* 495 F.2d 1226 (5th Cir. 1974), cert. denied, 419 U.S. 1079, 95 S. Ct. 667, 42 L. Ed. 2d 673 (1974); *Martin* v. *Rose,* 481 F.2d 658 (6th Cir. 1973), cert. denied, 414 U.S. 876, 94 S. Ct. 86, 38 L. Ed. 2d 121 (1973).

[8] *State* v. *Hogg,* 118 N.H. 262, 385 A.2d 844 (1978); *People* v. *Cooper,* 398 Mich. 450, 247 N.W.2d 866 (1976); *Commonwealth* v. *Mills,* 447 Pa. 163, 286 A.2d 638 (1971); cf. *Commonwealth* v. *Cepulonis,* Mass. , 373 N.E.2d 1136 (1978).

limited or rejected the dual sovereignty concept.[9] We are not persuaded to join those states in rejecting the clear language of the United States Supreme Court in *Bartkus* and *Abbate,* and the almost universal acceptance of those authorities in the cases we have cited in this opinion. Our constitution, first, has no double jeopardy clause, and although we have indicated that the prohibition against double jeopardy is implicit in our common law; *State* v. *Woodruff,* 2 Day 504, 507 (1807); we have never held that, under the circumstances of this case, a state prosecution is barred. We refrain from doing so in the present case. A contrary rule could result in an unseemly race between the federal and state authorities to obtain early jurisdiction, thereby eventuating in a frustration of either the national or state policy concerning law enforcement. To agree with the defendant could create an "undesirable result"; *Abbate* v. *United States,* supra, 195; "the result would be a shocking and untoward deprivation of the historic right and obligation of the states to maintain peace and order within their confines." *Bartkus* v. *Illinois,* supra, 137.

The dual sovereignty concept of *Bartkus* and *Abbate* is based upon the practical necessity of permitting the state and federal governments to enforce laws which they enact in their respective fields of operation. Those decisions, giving sensible recognition to the practicalities of our constitutional form of government, reject the premise that successive prosecutions are merely a judicial nuance, and com-

---

[9] Alaska, Arizona, Arkansas, California, Delaware, Georgia, Hawaii, Illinois, Indiana, Kansas, Minnesota, Montana, New York, North Dakota, Oklahoma, Pennsylvania, Utah, Virginia, and Washington have such legislation. See citations collected at American Law Institute, Double Jeopardy, 126–27 (1935), and Model Penal Code § 1.11, pp. 60–61, comment (Tent. Draft No. 5, 1956).

pellingly find that the necessities of the governments in enforcing their laws for the benefit of *all* citizens are of greater importance than the undesirability of an occasional imposition of two trials on an individual. We agree.

There is no error.

In this opinion COTTER, C. J., LOISELLE and BOGDANSKI, Js., concurred.

PETERS, J. (dissenting). While I agree with my colleagues that *Bartkus* v. *Illinois,* 359 U.S. 121, 79 S. Ct. 676, 3 L. Ed. 2d 684 (1959), and *Abbate* v. *United States,* 359 U.S. 187, 79 S. Ct. 666, 3 L. Ed. 2d 729 (1959), establish a rule of dual sovereignty that has continued to have vitality, I disagree about the implications of dual sovereignty for this court.

Dual sovereignty is one example of the recognition of the principle of federalism. *Bartkus* and *Abbate* hold no more than that the fourteenth and the fifth amendments to the United States constitution do not forbid one sovereign the right to reprosecute a criminal defendant because of his prior involvement with the other sovereign. Nothing in those cases compels, or even legitimates, automatic reprosecution as a matter of state law. That the rule of dual sovereignty is permissive rather than mandatory is clear from *Bartkus,* the case more directly relevant because it too involved state reprosecution after federal acquittal. *Bartkus* stated (pp. 138–39): "[T]hese problems are ones with which the States are obviously more competent to deal than is this Court. Furthermore, the rules resulting will intimately affect the efforts of a State to develop a rational and just body of criminal law

in the protection of its citizens. We ought not to utilize the Fourteenth Amendment to interfere with this development."

It is furthermore clear that the formal absence of a provision in our constitution expressly forbidding double jeopardy is not a barrier to consideration of the claim raised by the defendant. The prohibition against double jeopardy is, as my colleagues acknowledge, implicit in the common law, and our cases have so held. *State* v. *Langley,* 156 Conn. 598, 600–601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969); *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). This case comes to us as a matter of first impression as to which there are no binding precedents until today.

The facts of the case before us present a compelling argument for invocation of the prohibition against double jeopardy. The defendant is charged in this state with the same conspiracy for which he was indicted and acquitted in federal court. The incident that gave rise to both prosecutions was, from the outset, investigated jointly by federal and state authorities. There is no discernible prosecutorial interest that was not fully vindicated in the original federal trial. The state has made no affirmative showing why this defendant should twice be forced to run the gauntlet of criminal prosecution.

I believe this court should adopt the view of the Model Penal Code § 1.10 (Proposed Official Draft, 1962) barring reprosecution after acquittal in another jurisdiction unless "the offense of which the defendant was formerly . . . acquitted and the offense for which he is subsequently prosecuted each

requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil . . . ." This position has recently been accepted by a number of state courts; *Commonwealth* v. *Cepulonis,* Mass. , 373 N.E.2d 1136, 1141–42 (1978); *People* v. *Cooper,* 398 Mich. 450, 460–61, 247 N.W.2d 866 (1976); *State* v. *Hogg,* 118 N.H. 262, 266, 385 A.2d 844 (1978); *Commonwealth* v. *Mills,* 447 Pa. 163, 169–72, 286 A.2d 638 (1971).[1] It is unarguable that the instant reprosecution cannot meet the test proposed by the Model Penal Code.

My colleagues fear that a limitation on state authority to reprosecute could result in an unseemly race between the federal and the state authorities to obtain early jurisdiction. It seems to me at least as likely that the state and federal authorities will, as in the case before us, cooperate to assure two functionally identical opportunities to try a defendant more than once for one and the same offense. Unless there is a substantial independent state interest to be vindicated, scarce state prosecutorial resources might better be allocated to trying new crimes rather than to retrying old ones.

I would, therefore, find error on the part of the trial court.

---

[1] The Final Report of the National Commission on Reform of Federal Criminal Laws ("The Brown Commission") in 1971 recommended the enactment of federal legislation to modify *Bartkus* and *Abbate.* See Report on Proposed Federal Criminal Code, 34 Business Lawyer 725, 730 and 753 (January, 1979). The American Bar Association's Study Committee urges amendment of S. 1437, the proposed Criminal Code Reform Act of 1978, to incorporate the proposals of the Brown Commission. Id., 754.